Argued and submitted October 7, 2015, reversed March 16, 2016

In the Matter of M. A.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

M. A.,
*Respondent,*

*v.*

B. P.,
*Appellant.*

Multnomah County Circuit Court
2005816122;
Petition Number 110536;
A158684

370 P3d 536

Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services, argued the cause for appellant.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent Department of Human Services. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Christa Obold Eshleman argued the cause and filed the brief for respondent M. A.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Wilson, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

This juvenile dependency appeal by father challenges the juvenile court's decision to take jurisdiction over his daughter, M.[1] He argues that the court's findings that father neglected M's educational and grooming needs, and allowed M contact with mother despite a contrary visitation order, were insufficient to support juvenile court jurisdiction. On appeal, neither the Department of Human Services (DHS) nor child defends the merits of the court's jurisdictional ruling. Rather, both parties contend that father's appeal should be dismissed because the juvenile court's decision finding M within the jurisdiction of the court was not made in the form of an appealable judgment and the lack of an appealable jurisdictional judgment precludes our review of the court's jurisdictional determination.[2]

For the reasons explained below, we conclude that a judgment entered on January 29, 2015, served to reflect the juvenile court's concluding decision on jurisdiction, which was first reflected in jurisdictional findings made by the juvenile court in an earlier order that was not appealable. Because father appeals from that judgment, which is the first appealable jurisdictional judgment in this case, father's challenge to the assertion of jurisdiction by the court is reviewable in this appeal. On the merits, we accept DHS's concession that the allegations found proven by the juvenile court were insufficient to support jurisdiction over M, and reverse the jurisdictional judgment.[3]

---

[1] Mother stipulated to allegations that her mental health prevented her from safely caring for M and that she needed the help of the court and the Department of Human Services to address her mental health needs. She is not a party to this appeal.

[2] We note that, although the parties frame their arguments differently in terms of "appealability" and "reviewability," and to some extent, use those terms interchangeably, they are not the same. "Appealability" usually concerns whether an appeal may be taken at all. *State v. Montgomery*, 294 Or 417, 420, 657 P2d 668 (1983). And "reviewability" concerns what issues and arguments a court can consider in a case that is appealable. *Id.* Both DHS and child seem to acknowledge that there is an appealable judgment in the case, but argue that it is not a *jurisdictional* judgment, rendering father's assignments of error as to jurisdiction unreviewable. Both DHS and child further argue that the jurisdictional *order* about which father complains is not an appealable judgment.

[3] Since the events that are at issue on appeal, subsequent juvenile court proceedings have occurred. In short, DHS filed an amended petition in August 2015

Therefore, the contested issue on appeal is whether, on appeal of the juvenile court's January 29, 2015, judgment, we can review father's challenge to the court's assertion of jurisdiction over M. The dependency proceedings in this case occurred in Multnomah County Circuit Court and a complicating factor below and on appeal is that district's use of juvenile referees, who also sit sometimes as judges pro tempore, to hear and decide issues in juvenile proceedings. Because it provides important context to the procedural history, we begin by summarizing the statutory authorization for the use of referees in juvenile proceedings.

The juvenile code authorizes the appointment of juvenile referees by the juvenile court judge. ORS 419A.150(1). Moreover, "[t]he judge may direct that any case, or all cases of a class designated by the judge, be processed or heard in the first instance by a referee in the manner provided for the hearing of cases by the court." ORS 419A.150(2). After a hearing conducted by a referee, the referee "shall transmit" the referee's findings, recommendations, or order to the juvenile court in writing. *Id.* Within 10 days of entry of the referee's order, a party may seek rehearing of that decision by the juvenile court. ORS 419A.150(7). Alternatively, a juvenile court judge may order rehearing on the judge's own motion. ORS 419A.150(6). Referee orders become immediately effective (subject to rehearing), and if rehearing is not sought or ordered within 10 days, the referee's findings

asserting allegations against father, including that father had no contact with M or DHS since M's removal from his care in March 2014, even though visitation had been made available to him starting in November 2014. The juvenile court held a jurisdictional hearing on those allegations in October 2015, and entered a judgment establishing jurisdiction over M based on allegations in the August 2015 petition. Father appealed that judgment, and that appeal is currently pending in this court in Case No. A160781. DHS also petitioned for termination of father's parental rights. Father failed to appear at the termination trial and, after reviewing the evidence presented by DHS, the court entered a judgment terminating his parental rights. Father has also appealed that judgment, and that appeal is pending in this court in Case No. A161100. We note that, at this point in time, the subsequent proceedings have not made this appeal moot. Because father's appeal of the subsequent jurisdictional judgment and termination judgment may provide father with relief from those judgments, the court's assertion of jurisdiction over M in October 2014 may still have a practical effect on the rights of the parties. *See Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 292 P3d 548 (2012) ("As a general rule, a case becomes moot when the court's decision no longer will have a practical effect on the rights of the parties.").

or order becomes "a final order of the juvenile court." ORS 419A.150(4).

As the Supreme Court explained in *State ex rel Juv. Dept. v. J. W.*, 345 Or 292, 299, 193 P3d 20 (2008), a referee's decision to take jurisdiction is not appealable because it does not comply with the statutory requirements of a judgment—in particular, it is not signed by a judge as required by ORS 18.038(4)(c).[4] In *J. W.*, the court was required to determine the appealability of a document entered by a juvenile referee that was labeled "judgment establishing dependency jurisdiction and disposition." *Id.* at 295. The court noted that juvenile court proceedings are governed by ORS chapter 419, and that ORS 419A.200(1) provides that "any person or entity * * * whose rights or duties are adversely affected by a judgment of the juvenile court may appeal therefrom." ORS 419A.205(1)(a) defines "judgment" for purposes of appeal as including "[a] judgment finding a child or youth to be within the jurisdiction of the court." *Id.* at 296. After acknowledging that the referee's order was a finding that the child was "within the jurisdiction of the court," the court explained that a "judgment" under ORS 419A.200 and ORS 419A.205(1)(a) and (b) must also comply with statutes in ORS chapter 18 that govern judgments generally. *Id.* at 298. The court observed that ORS 18.038 contains specific requirements for a document to constitute a "judgment document," including the signature of a judge. Because the "judgment" entered by the referee did not contain the signature of the judge, and because ORS 18.245 makes compliance with ORS 18.038(4) a jurisdictional requirement, the court concluded that the "judgment" entered by the referee was not appealable. *Id.* at 298-99.

With that background in mind, we recount the complicated procedural history of this case. In May 2014, DHS took temporary custody of M and filed a dependency petition. On September 2, 2014, mother stipulated to allegations that her mental health prevented her from safely caring for M. Juvenile Referee Hughes entered an order that reflected

---

[4] ORS 18.038 generally sets forth the requirements for a "judgment document." ORS 18.038(4)(c), in particular, requires a judgment document to include "[t]he signature of the judge rendering the judgment."

mother's stipulation and indicated that father was contesting the single allegation against him in the petition—that he had sexually assaulted M. On September 24, 2014, DHS amended its petition, alleging that M was at risk of substantial harm because father (1) had sexually assaulted M; (2) had a pattern of drug use; (3) allowed M to reside in unfit conditions; and (4) was neglectful of M, including failing to enroll M in school for three months in late 2013, failing to ensure M consistently attended school once enrolled, and failing to provide M with clean clothes, routine meals, and appropriate grooming.

To address the allegations in the amended petition against father, Judge Greenlick held a jurisdictional hearing over five days in late September and early October 2014. At the close of the hearing, the court made oral findings that M was within the jurisdiction of the court based on the proven allegations that father (1) neglected M by failing to ensure that she regularly attended school, (2) failed to properly groom her, and (3) allowed M to have unsupervised visits with mother under circumstances inconsistent with a previously entered visitation order.[5] The court concluded that DHS had failed to prove the other allegations against father and dismissed them. Next, the court asked the parties whether it was appropriate to enter a judgment "at this point" even though a disposition had not been made. Counsel for father and DHS both informed the court, albeit incorrectly, that it was not appropriate to enter a judgment until the "dispositional findings" had been made.[6] Accordingly, the court entered an order on October 10, 2014, that memorialized its

---

[5] The court, with the consent of the parties, amended the dependency petition to reflect the allegations that the court had found proven by a preponderance of the evidence.

[6] The juvenile dependency statutes clearly contemplate that jurisdictional and dispositional judgments may be entered separately, and are separately appealable. *See State ex rel Juv. Dept. v. J. H.-O.*, 223 Or App 412, 417, 196 P3d 36 (2008) (noting that the controlling statutory provisions demonstrate that "the legislature anticipated a scenario where a party might challenge a jurisdictional judgment before the disposition has occurred); *see also* ORS 419A.205(1)(a) (judgment finding a child or youth to be within the jurisdiction of the court is an appealable judgment); ORS 419A.205(1)(b) ("judgment disposing of a petition, including, but not limited to, a disposition under ORS 419B.325" is an appealable judgment); ORS 419A.205(2) (appeal of a jurisdictional judgment does not deprive the juvenile court of jurisdiction to proceed with disposition).

oral findings and concluded that M was within the juris-diction of the court pursuant to ORS 419B.100(1). That document was titled "Findings and Orders Regarding One Parent: [Father]."[7]

Subsequently, the parties appeared before Referee Hughes on November 21, 2014, for a "review hearing" and "disposition." That same day, Referee Hughes entered an order indicating that she was entering "Findings and Orders Regarding Both Parents." In the section of the order titled "Jurisdiction" Referee Hughes indicated that "Trial was held before Judge Greenlick and findings were made on Oct 10, 2014 order." As related to disposition, Referee Hughes con-tinued M's placement in relative foster care, ordered that M be made a ward of the court, and committed M to the legal custody of DHS. Further, she ordered father to participate in services, including, among other things, therapeutic visi-tation with M, a psychological evaluation, and participation in M's therapy.[8]

Within 10 days of Referee Hughes' order, father filed a rehearing request, seeking rehearing on "disposition."[9] The rehearing was held before Judge Kurshner on December 19, 2014. At that hearing, father argued that Judge Greenlick's findings in the October 10, 2014, order were insufficient to justify jurisdiction, and, therefore, asked Judge Kurshner to dismiss the case. Father also asserted that the requirement in Referee Hughes' November 21, 2014, order that father undergo a psychological evaluation lacked a nexus to the basis for jurisdiction. Judge Kurshner refused to consider father's challenge to the basis for jurisdiction, pointing out to father that his request for rehearing had indicated that he was seeking rehearing on disposition, not jurisdiction. She also expressed doubt that "rehearing" would be appropriate as to jurisdictional findings made by another juvenile court

---

[7] Father does not challenge as inappropriate the juvenile court's assertion of jurisdiction over M in the form of an unappealable order, and given our ultimate conclusion in this case, we need not decide that issue.

[8] Referee Hughes had ordered mother to engage in services on September 2, 2014.

[9] The check-the-box form filed by father that requested rehearing had sep-arate boxes for "jurisdiction" and "disposition." Father checked only the box for "disposition."

judge. Accordingly, she stated that "[t]he issue is a rehearing on the issue—on Referee Hughes' November 21st dispositional judgment. You are certainly free to appeal Judge Greenlick's order." As to disposition, she rejected father's argument, concluding that there was a sufficient nexus between the basis for jurisdiction and the need for a psychological evaluation. Judge Kurshner entered an order on January 6, 2015, affirming Referee Hughes' November 21, 2014, "dispositional judgment * * * in all respects."

On January 29, 2015, Hughes, acting in her capacity as a judge pro tempore, entered a document titled "Judgment Establishing Dependency Jurisdiction as to Both Parents" and "Judgment of Disposition." That document indicated that findings and orders regarding "Father/Dispo" were entered on November 21, 2014, and that, because no party had sought rehearing of that order during the time prescribed, that order was now a final order of the juvenile court pursuant to ORS 419A.150(7).[10] Further, the document stated that it "hereby incorporates the above referenced final order in its entirety into this judgment document and enters it as a final judgment of the court."

On January 29, 2015, father filed a notice of appeal of Judge Kurshner's January 6, 2015, order. This court determined that the January 6, 2015, order was not appealable. On February 20, 2015, father filed an amended notice of appeal indicating that he was also appealing the January 29, 2015, judgment.

Meanwhile, Hughes (acting again as a referee) held a review hearing and signed a "Review Order" on February 19, 2015. No party sought rehearing of that order, and on March 18, 2015, Hughes, returning to her capacity as a judge pro tempore, entered a "Review Judgment," which incorporated the February 19, 2015, order "in its entirety" into the judgment "as a final judgment of the court." On April 7, 2015, father filed another amended notice of appeal,

_____

[10] The statement in the judgment that no party had sought rehearing of the November 21, 2014, order is incorrect. Nevertheless, given that our task is to determine whether there was an appealable judgment that would allow us to review father's jurisdictional challenge, the incorrect statement in the judgment does not have any bearing on our analysis.

appealing the March 18, 2015, judgment. Shortly thereafter, father requested a summary determination of appealability of the March 18, 2015, judgment.

Eventually, father's request resulted in an order from the Chief Judge of this court. In that order, the Chief Judge concluded that the March 18, 2015, judgment was not appealable because it was simply a judgment that adopted a prior referee order as to which no party had requested a rehearing. In a footnote in the order, the Chief Judge briefly addressed the appealability of the January 29, 2015, judgment, noting that "appellant has not moved for a determination of the appealability of that judgment and the court makes none."

The parties' briefing has squarely placed the reviewability of the January 29, 2015, judgment at issue. DHS asserts that, because the juvenile court never entered an appealable jurisdictional judgment, father's contention that the court erred in asserting jurisdiction over M is not reviewable on appeal of the January 29, 2015, judgment. As for the January 29, 2015, judgment, DHS contends that the court intended only to enter judgment upholding the "disposition" in Referee Hughes' November 21, 2014, order. DHS acknowledges that the January 29, 2015, judgment is marked as "Judgment Establishing Dependency Jurisdiction," but contends that that title does not make it a "jurisdictional" judgment, because to construe it that way would conflict with the court's express intent set out in the body of the judgment document—*i.e.*, to affirm the disposition made in the November 21, 2014, referee's order. DHS also suggests that "father is not necessarily without a remedy" in this procedural posture, because "if father were to obtain [an appealable jurisdictional judgment], he could appeal from it."

Child generally agrees with DHS, although she makes slightly different arguments. She asserts that father invited Judge Greenlick to enter an unappealable jurisdictional order, as opposed to an appealable judgment. So, to the extent the juvenile court erred by not entering a jurisdictional judgment at that point, *see* ORS 18.035(2) (in juvenile proceedings, "the judge shall ensure that a judgment document complying with ORS 18.038 and 18.048 is created and

filed"), child argues that the invited error doctrine would preclude us from reversing on appeal.

Father counters that he appealed the first appealable jurisdictional judgment, and thus, his appeal of the January 29, 2015, judgment, allows us to review the court's decision to take jurisdiction over M. In essence, father contends that, because Judge Greenlick's October 14, 2014, order asserting jurisdiction over M was not appealable, the court's jurisdictional determination in that order can be reviewed on appeal from the first appealable jurisdictional judgment—in this case, the January 29, 2015, judgment.

Accordingly, the dispositive issue is whether the January 29, 2015, judgment is properly characterized as a jurisdictional judgment. The answer to that question requires us to first examine what constitutes a jurisdictional judgment in juvenile proceedings. ORS 419A.205(1)(a) states that, for purposes of being appealed, a judgment includes "[a] judgment finding a child * * * within the jurisdiction of the court." As the Supreme Court noted in *J. W.*, a "judgment" under ORS 419A.200 and ORS 419A.205(1)(a) and (b)—the relevant statutes governing appeals in juvenile proceedings—must also comply with the statutes in ORS chapter 18 that govern judgments generally. 345 Or at 298. Therefore, we must also examine the relevant statutes in ORS chapter 18 to determine whether the January 29, 2015, judgment is a "judgment finding [M] within the jurisdiction of the court."

ORS 18.005(8) defines "judgment" as follows:

"'Judgment' means the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document."

ORS 18.005(9), in turn, defines "judgment document" as follows:

"'Judgment document' means a writing in the form provided by ORS 18.038 that incorporates a court's judgment."

As the Supreme Court explained in *Interstate Roofing, Inc. v. Springville Corp.*, 347 Or 144, 152, 218 P3d 113 (2009), "judgment," as statutorily defined, consists of "two distinct

parts, one substantive and one formal. Substantively, the trial court must make a 'concluding decision * * * on one or more requests for relief.' * * * Formally, the trial court must ensure that the concluding decision is reflected in a judgment document." *Id.* (first ellipses in original). If the judgment document does not reflect the concluding decision of one or more claims, it does not meet the statutory definition of "judgment document." *Id.* And, similarly, "a trial court's concluding decision of a claim must be reflected in a judgment document, or it is not a legally efficacious judgment." *Id.*

There is no dispute that the January 29, 2015, judgment is "a writing in the form provided by ORS 18.038." It was plainly titled as a judgment, ORS 18.038(1); it was separate from any other document in the action, ORS 18.038(3); and it included the name of the court, the file number, the names of the parties, and the signature of a judge, ORS 18.038(4).

The dispositive question is whether the January 29, 2015, judgment substantively expresses a "concluding decision" on jurisdiction over M. DHS and child assert that it does not. As noted, DHS acknowledges that the document is titled in part "Judgment Establishing Dependency Jurisdiction as to Both Parents,"[11] but appears to argue that the body of the document evinces an intent to enter a "concluding decision" only as to "disposition." We disagree.

*Interstate Roofing* counsels that ORS chapter 18 does not prescribe particular words that must be used to reflect the court's "concluding decision." 347 Or at 157. Put another way, "a properly titled judgment need not use particular words of adjudication in the text, as long as the text expresses a concluding decision on the claim." *Id.* at 161. Here, we conclude that the court's January 29, 2015, judgment expresses a "concluding decision" on jurisdiction.

Initially, we conclude that it is significant that the juvenile court labeled the January 29, 2015, judgment explicitly as a jurisdictional judgment. *Interstate Roofing*

---

[11] As already noted, 277 Or App at 30, the document was also labeled a "Judgment of Disposition."

demonstrates that the title of a judgment document can be significant to determining whether the trial court's judgment document reflects a concluding decision on a claim. *Id.* at 162. In that case, the plaintiff filed a civil action raising three claims for relief, and the defendant answered, asserting counterclaims. *Id.* at 146. The case was bifurcated so that some claims could be tried to the court, and the remaining claims could later be tried to a jury. After the bench trial, the court entered a document titled "Limited Judgment and Money Award." *Id.* at 147. The issue before the Supreme Court was whether the "limited judgment document" entered by the trial court was a final and appealable judgment as to the three claims tried to the court. That issue turned on whether the "limited judgment" had conclusively resolved those three claims. If it had, the appeal as to those claims was untimely. *Id.* at 148.

As to the third claim mentioned in the limited judgment (a negligence counterclaim), the court noted some text in the body of the document that reflected the trial court's intent to render a concluding decision on the negligence counterclaim.[12] The court also found it significant that the trial court had titled the document a "limited judgment." In the court's view,

> "[b]oth legally and as a practical matter, it is a document in which a trial court, by signing it, reflected its intent to conclusively resolve some but not all of the claims in a particular action. We believe that, in general, the significance of signing such a document is not lost on trial court judges."

*Id.* at 162. Similarly, here, we conclude that the juvenile court, by labeling the document a jurisdictional judgment, reflected its intent to "conclusively decide" jurisdiction as to M.

The body of the document explicitly incorporates the November 21, 2014, order, which referenced Judge Greenlick's jurisdictional findings in the October 10, 2014, order. That is, the document's incorporation of the November 21, 2014, order "in its entirety" fairly demonstrates that the

---

[12] The limited judgment stated "as a matter of law, a remedy in Tort is not available." *Id.* at 162.

court intended to issue a concluding decision on jurisdiction as well as disposition. Although the November 21, 2014, order did not expressly assert jurisdiction over M, or reflect in its caption that it was a jurisdictional order, it made child a ward of the court, granted legal custody to DHS, and referenced that Judge Greenlick had made jurisdictional findings. Taken together with the reference to Judge Greenlick's order, these are strong indications that Judge Hughes intended to make a concluding decision as to jurisdiction over M. *See J. W.*, 345 Or at 297 n 5 (referee made child a ward of the court and granted legal custody to DHS, and although referee did not check the box indicating that she found child to be within the jurisdiction of the court, the parties assumed the factual findings she made were sufficient to establish jurisdiction).

We are mindful that the juvenile code does not contemplate a jurisdictional judgment for each parent. Rather, it contemplates a single judgment of jurisdiction based on the totality of the conditions and circumstances of the child. *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 392, 328 P3d 769 (2014). Although mother was a witness in the jurisdictional hearing before Judge Greenlick, she was not represented by counsel and did not participate as a party. Judge Greenlick doubted mother's credibility as a witness but he did not purport to make a determination about jurisdiction over M considering mother's circumstances. In this case, when mother stipulated to one of the jurisdictional allegations concerning her on September 2, 2014, but father asked for a trial, Referee Hughes correctly followed the prescription in *W. A. C.*:

> "The proper procedure in those cases is for the court to receive one parent's admissions and delay making a jurisdictional determination until after the contested hearing [sought by the other parent]."

*Id.* at 394-95.

Mother participated as a party, represented by counsel, at the November 21, 2014, hearing. The title of the November 21, 2014, order shows that it reflects "findings and orders regarding both parents," and the January 29, 2015,

judgment is captioned, in part, as a "Judgment Establishing Dependency Jurisdiction as to Both Parents."

In sum, we conclude that, when the title of the January 29, 2015, judgment is considered in conjunction with explicit text in the document that incorporates the November 21, 2014, order, which in turn referred to Judge Greenlick's order finding facts as to father supporting jurisdiction over M, the January 29, 2015, judgment represents a concluding decision on jurisdiction. Thus, we can appropriately review father's challenge to the juvenile court's assertion of jurisdiction.

On the merits, we accept DHS's concession that the evidence was legally insufficient to demonstrate that M's conditions or circumstances at the time of the hearing demonstrated a reasonable likelihood of harm to M's welfare. *See* ORS 419B.100(1); *Dept. of Human Services v. M. Q.*, 253 Or App 776, 785, 292 P3d 616 (2012) (DHS has burden to establish a nexus between the allegedly risk-causing conduct or circumstances and risk of harm to child, and that the risk of harm is present at the time of the hearing and not merely speculative).

Reversed.