Argued and submitted May 26, affirmed August 3, 2022

In the Matter of C. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. L. S.,
*Appellant.*

Baker County Circuit Court
21JU03067; A177578 (Control)

In the Matter of H. L. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. L. S.,
*Appellant.*

Baker County Circuit Court
21JU03068; A177579

In the Matter of S. J. G. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. L. S.,
*Appellant.*

Baker County Circuit Court
21JU03069; A177581

515 P3d 932

In this consolidated juvenile dependency appeal, mother appeals from a judgment asserting jurisdiction over her three children, H, C, and S. Mother argues that the juvenile court erred in admitting H's out-of-court statements as nonhearsay under OEC 801(4)(b)(A) and in admitting a Department of Human Services (DHS) caseworker's opinions concerning mother's drug use. Mother also argues that the record is legally insufficient to support a nexus between her alleged dangerous behaviors—substance abuse and failure to supervise her children—and

a current, nonspeculative risk of serious loss or injury to her children. *Held*: The juvenile court erred in admitting H's out-of-court statements, because DHS did not prove that H had taken an adverse position to the allegations in the dependency petition; however, the erroneously admitted testimony was cumulative, and thus harmless. Similarly, even if the juvenile court erred in admitting the DHS caseworker's testimony, it was cumulative, and thus harmless. The record amply supports the juvenile court's findings and ultimate conclusion that H, C, and S were within its dependency jurisdiction.

Affirmed.


Matthew B. Shirtcliff, Judge.

Sean K. Connor, Deputy Public Defender, argued the cause for appellant. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Joyce, Judge, and Hadlock, Judge pro tempore.

JOYCE, J.

Affirmed.

**JOYCE, J.**

In this consolidated juvenile dependency appeal, mother appeals from a judgment asserting jurisdiction over her three children, H, C, and S. In her first two assignments of error, mother argues that the juvenile court erred in admitting H's out-of-court statements as nonhearsay under OEC 801(4)(b)(A). In her third through fifth assignments of error, mother argues that the juvenile court erred in designating a Department of Human Services (DHS) caseworker as an expert witness and in admitting that caseworker's opinions concerning mother's drug use. In her remaining assignments of error, mother argues that the juvenile court erred in taking jurisdiction over H, C, and S because DHS failed to establish a nexus between mother's alleged dangerous behaviors—substance abuse and failure to supervise her children—and a current, nonspeculative risk of serious loss or injury to her children. We affirm.

## ADMISSION OF STATEMENTS UNDER OEC 801(4)(b)(A)

Mother argues that the juvenile court erred in admitting H's out-of-court statements that mother was abusing substance through H's psychologist, Gunasekara. The trial court admitted Gunasekara's testimony as a non-hearsay statement of a party opponent under OEC 801 (4)(b)(A). Mother maintains that H was not a party opponent because H did not take a position before the juvenile court on whether mother's alleged substance abuse had actually occurred. DHS responds that H was a party opponent because H "want[ed] to be with [her] mother[,]" and that, even if the juvenile court erroneously admitted H's out-of-court statements, Gunasekara's testimony was cumulative of other evidence, and thus any error was harmless.[1] We review a juvenile court's determination that a statement was not hearsay for legal error. *State v. Hartley*, 289 Or App

---

[1] DHS also argues that while, "[m]other preserved her argument that [H] was not a party opponent," mother "did not preserve her argument that [H] needed to dispute the allegation that mother had used drugs." *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[.]"). We have reviewed the record and conclude that mother's arguments below were adequate to preserve her claim on appeal.

25, 29, 407 P3d 902 (2017). We conclude that while the juvenile court erred in concluding that H was a party opponent, any error in doing so was harmless.

An out-of-court statement is typically hearsay, and thus inadmissible, if it is offered to prove the truth of the matter it asserts. OEC 801(3); OEC 802. However, certain out-of-court statements are not hearsay. As relevant here, under OEC 801(4)(b)(A), an out-of-court statement is not hearsay if the statement is offered against a party and is that party's own statement. "A child who is the subject of a juvenile dependency proceeding is considered a party to the proceeding." *Dept. of Human Services v. G. D. W.*, 353 Or 25, 38, 292 P3d 548 (2012) (citing ORS 419B.875(1)(a)(A), (2)).

Before 2012, Oregon courts consistently held that, in dependency cases, DHS could offer a child's out-of-court statements as nonhearsay statements of a party opponent because the child's interests were inherently "adverse to DHS because evidence introduced by DHS to establish jurisdiction would infringe on a child's interest to maintain a 'parent-child relationship.'" *Dept. of Human Services v. J. G.*, 251 Or App 515, 519, 283 P3d 450 (2012), *vac'd*, 353 Or 428 (2013) (quoting *State ex rel Juv. Dept. v. Cowens*, 143 Or App 68, 71-72, 922 P2d 1258, *rev den*, 324 Or 395 (1996)).

However, in *G. D. W.*, the Supreme Court rejected the notion that a party can be deemed an opponent on "a theory of opposition that is based on how the parties' presumed 'interests' are aligned within the structure of the litigation." 353 Or at 34-35. After examining the legislature's intent in enacting OEC 801(4)(b)(A), the Supreme Court concluded that an out-of-court statement is offered "against" a party if "the statement is offered against a position that the party actually has declared in the proceeding[.]" *Id.* at 37. Thus, if DHS can show that the child has "declared a position on the issues before the court that is adverse to the allegations in the dependency petition," through pleadings, opening statements and closing arguments, and by offering testimony and other evidence, "then [DHS], as the proponent of those allegations, may offer the child's out-of-court's statements *against the child* under OEC 801(4)(b)(A)." *Id.* at 38 (emphasis in original).

In this case, the record contains no evidence that supports the conclusion that H declared a position on the issues before the court to support DHS offering H's statements against H; to the contrary, the statements, at most, reflected that H was aligned with DHS. DHS points to H's attorney's opening statement that the "children want to be with their mother" as a declaration that H was opposed to DHS with respect to the allegation of mother's substance abuse. But a generalized statement that a child wants to be with a parent, without any indication as to when or under what conditions the child wants to be with the parent or whether the child believes it is safe to be with the parent, does not suggest that the child was adverse to DHS's intervention. *See G. D. W.*, 353 Or at 39 (finding that the record contained no evidence that would support the conclusion that the child "took a position in the proceeding that was adverse to the state on the allegation that father had sexually abused [her]"); *Dept. of Human Services v. J. H.*, 320 Or App 277, 278, 511 P3d 84 (2022) ("[T]he record supports a conclusion that [the child] was aligned with parents, and adverse to DHS, on the allegation of father's sexual abuse.").

That holds particularly true in light of other statements from H's attorney, which suggest that H was aligned with DHS and was in favor of the juvenile court taking jurisdiction: "[T]he way that I look at it, one of three things is true. Either [mother]'s life is crashed on the rocks of reality because of doing dope or because she is absolutely ignoring her mental health needs or both *** , and *it is detrimentally affecting her children.*" (Emphasis added.); *see G. D. W.*, 353 Or at 38-39 (the child's attorney's closing remarks "suggested that child was aligned with the state's position on the sexual abuse allegation"). H's attorney even urged mother to "take[] this opportunity to see the reality of what I am saying, engage in drug and alcohol treatment, engage in mental health treatment, and be the mother that my clients deserve." Those statements are a more substantive declaration of H's position on the issues before the juvenile court and reflect that H was aligned with—not adverse to—DHS. Accordingly, the juvenile court erred in admitting H's out-of-court's statements under OEC 801(4)(b)(A).

        DHS nonetheless contends that any error in admitting H's statements concerning mother's drug abuse was harmless. We agree. Evidentiary errors are harmless and do not warrant reversal "if there is little likelihood that the particular error affected the verdict." *G. D. W.*, 353 Or at 39 (quoting *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003)). Erroneously admitted evidence may be harmless if it is merely cumulative of, instead of qualitatively different than, other evidence presented to the factfinder, even if that other evidence was erroneously admitted. *Dept. of Human Services v. M. E. S.*, 317 Or App 817, 818, 505 P3d 1099 (2022); *Dept. of Human Services v. C. M.*, 284 Or App 521, 532-33, 392 P3d 820 (2017).

        In support of its finding that mother was using drugs, the juvenile court did not mention or rely on Gunasekara's testimony or Gunasekara's initial Center for Human Development report, which contained multiple statements from H concerning mother's drug abuse. Instead, the juvenile court relied on testimony from C's probation officer, mother's parents, and three DHS caseworkers, one of whom testified that H had told him that mother was using drugs, that H had discovered needles and illegal substances in the home, and that mother and C smoked marijuana "every day" in the home.[2] Given the amount of evidence that the juvenile court considered, as well as its statement that it had "absolutely no question" that "over the last six months to a year there's been current drug use by mother \*\*\* and it's affected her ability to parent," we conclude that the juvenile court's decision to allow H's out-of-court statements through Gunasekara's testimony had little likelihood of affecting its jurisdictional determination.

## ADMISSION OF EXPERT TESTIMONY

        In mother's third through fifth assignments of error, she assigns error to the admission of testimony of one of the children's caseworkers, Springer. Springer testified that, on multiple occasions, she observed mother behaving erratically, having a hard time staying focused, having "fast rapid

_____

[2] Mother did not object to or assign error to the admission of those out-of-court statements.

speech," being "very emotional[,]" and not being able to engage in requested tasks. Springer attributed those behaviors to drug use. Mother argues that the juvenile court erroneously designated Springer as an expert witness and that Springer's opinion that mother's behavior was the result of drug use exceeded the scope of permissible lay witness testimony.

Even if the juvenile court erred in admitting Springer's testimony, it was harmless. The juvenile court placed an equal amount of weight on the testimony from C's probation officer when issuing its oral findings concerning mother's drug use: "I also find that [C's probation officer] indicated that he had—would come to the home and find [mother] sleeping in the middle of the day and being pers—in essence seeming hung over or affected by drugs, I find that credible." Additionally, the juvenile court found mother's parents' testimony that "they believe [mother] is using" and that "they would be concerned if the children were returned to [mother] based on that drug use" compelling, especially given that mother's parents "are family members who are close to [mother] who have, if anything, a bias towards her[.]" Lastly, the juvenile court relied on the unobjected-to testimony recounting H's statements that "there are needles in the home, weed was being used in the home, [and mother] would be gone for three days at a time[;]" a DHS caseworker "finding food and raw sewage in the bathroom[;]" and another DHS caseworker "describing glass on the floor" to support a nexus between drug use and mother's inability to parent or keep a clean and safe home.

Given the evidence the juvenile court considered, as well as its statement that it had "absolutely no question" that "over the last six months to a year there's been current drug use by mother *** and it's affected her ability to parent," it is unlikely that the juvenile court's decision to allow Springer's testimony affected its jurisdictional determination.

## ADEQUACY OF EVIDENCE SUPPORTING JUVENILE COURT JURISDICTION

For her remaining assignments of error, mother argues that the juvenile court erred in finding that H, C,

and S were within its jurisdiction. Mother has not requested that we exercise our discretion to take *de novo* review, ORS 19.415(3)(b), and we decline to do so. *See* ORAP 5.40(8)(c) (we exercise *de novo* review "only in exceptional cases"). Accordingly, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile]court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). We conclude that the record amply supports the juvenile court's findings and ultimate conclusion that H, C, and S were within its dependency jurisdiction.

Affirmed.