Submitted November 6, motion to dismiss denied, jurisdictional judgment
reversed December 30, 2015

In the Matter of A. L. H.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. H.
and S. H.,
*Appellants.*

Umatilla County Circuit Court
JV150017;
Petition Number JV150017A;
A159624

365 P3d 1183

Laura S. Anderson and Laura S. Anderson, LLC, filed
the brief for appellant A. H.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant S. H.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Nakamoto, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Parents appeal from a juvenile court judgment assuming jurisdiction over their child, A, pursuant to ORS 419B.100(1)(c). The court took jurisdiction over A based on allegations that mother's behaviors interfere with her ability to safely parent A and place A at risk of harm; that A's parents could not meet A's specialized needs; and that A had disclosed that a family member sexually abused her, and parents failed to take steps to protect A from the family member, who lived on the same property. At the time of the jurisdictional hearing, A was living with her grandparents. According to parents, there was no dispute that A was doing well in grandparents' care and that both parents supported her in continuing to live with grandparents for as long as she wished. Parents contend that the juvenile court erred in asserting jurisdiction over A because there was no evidence that living with grandparents exposed her to a current, nonspeculative threat of serious loss or injury that would likely be realized without the court's intervention. *See Dept. of Human Services v. A. L.*, 268 Or App 391, 400, 342 P3d 174 (2015) ("Because parents have entrusted the primary care of the children to the paternal grandparents, who do not pose a current threat of harm, the court did not have a basis for asserting jurisdiction over the children.").

The Department of Human Services (DHS) first asserts that, because the juvenile court has entered a judgment dismissing jurisdiction and terminating the wardship of A, we should dismiss the appeal as moot. "Under Oregon law, when changed circumstances render an appeal moot, it will be dismissed." *Brownstone Homes Condo. Assn. v. Brownstone Forest Hts.*, 358 Or 26, 30, 361 P3d 1 (2015). An appeal is moot when a decision will no longer "have a practical effect on the rights of the parties." *Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 292 P3d 548 (2012). However, "[e]ven if the main issue in a controversy has been resolved, collateral consequences *may* prevent the controversy from being moot under some circumstances." *Barnes v. Thompson*, 159 Or App 383, 386, 977 P2d 431, *rev den*, 329 Or 447 (1999) (emphasis in original). "A collateral consequence for purposes of mootness is a probable adverse

consequence to [a party] as a result of the challenged action." *State v. Hauskins*, 251 Or App 34, 36, 281 P3d 669 (2012).

According to parents, the jurisdictional judgment has collateral consequences and, therefore, the appeal is not moot. Parents point to several adverse consequences that result from the judgment and cause their interests to remain adverse to DHS, meaning that a decision from this court will have a practical effect on the parties. They explain that a parent has the right to seek review of a "founded disposition" determining that a parent is a perpetrator of child abuse or neglect. *See* OAR 413-010-0720(5). However, a parent is barred from challenging that disposition if a legal proceeding results in a finding consistent with the founded disposition. *See* OAR 413-010-0722(1); OAR 413-010-0723. And, according to parents, a founded disposition, such as the neglect findings at issue in this case, puts a parent at a disadvantage in any future investigation by DHS. *See State ex rel Juv. Dept. v. L. B.*, 233 Or App 360, 365, 226 P3d 66 (2010) (appeal from jurisdictional judgment not moot where it, "as well as any concomitant DHS findings regarding abuse or neglect, negatively affect father's and-mother's record with the department").

Second, mother asserts that the jurisdictional judgment had and continues to have negative effects on her employment. In an affidavit submitted in opposition to dismissal of the appeal, mother states that, prior to DHS's involvement with the family, she worked in education, first as a special education assistant and, later, as a teacher. In those positions she was subject to background checks. When the principal at the school where mother taught learned that mother was involved in this dependency case, he informed her that he would have to report that information to the district superintendent to determine whether to put her on administrative leave during the pendency of the case. According to mother, she resigned before being put on administrative leave and, thereafter, had trouble obtaining employment. In her view, the DHS case will continue to affect her employment. *See id.* at 364 (collateral consequences where the father's affidavit gave "rise to reasonable inferences that the juvenile court's initial judgment

has had—and will continue to have—collateral effects on father's employment prospects").

Parents also assert that there is a social stigma that results from the juvenile court's determination that they neglected their daughter by, among other things, failing to protect her from a sexual abuser after she disclosed the abuse to them. According to mother, the family lives "in a small community where news travels fast, especially among people in the teaching profession." *See G. D. W.*, 353 Or at 32 (noting that, "although perhaps not sufficient by itself to create a justiciable controversy, the social stigma" that the parent suffered as a result of the judicial findings underlying the jurisdictional judgment was significant).

We agree with parents that, taken together, all of those collateral consequences—the negative effect on their record with DHS, the effects on mother's employment, and the negative social stigma associated with the DHS case— are significant. We therefore conclude that a decision in this case would have a practical effect and that the case is not moot. *See id.* (review of jurisdictional judgment not moot in light of possible adverse legal effect of judgment and social stigma); *L. B.*, 233 Or App at 363-65 (appeal from jurisdictional judgment not moot in light of collateral effects on the father's employment prospects, negative effect on the parents' record with DHS, and social stigma). Accordingly, we reject DHS's contention that the appeal should be dismissed.

On the merits of the appeal, DHS concedes that, under the circumstances of this case, the record does not contain legally sufficient evidence of a current threat of harm to A. According to DHS,

> "[b]y the time of the jurisdictional hearing, DHS had placed [A] with her paternal grandparents. The record lacks any evidence that those grandparents were unsafe. Further, the record showed that, although DHS effected [A]'s placement with grandparents, the placement would continue even without juvenile court jurisdiction or additional involvement by DHS. Thus, there was no ongoing threat to [A]'s welfare at the time of the jurisdictional hearing and jurisdiction was not warranted."

Accordingly, DHS agrees that we "should reverse the juvenile court's jurisdictional judgment." We agree with DHS that the record lacks sufficient evidence to support jurisdiction and accept DHS's concession of error. We therefore reverse the jurisdictional judgment.

Motion to dismiss denied; jurisdictional judgment reversed.