Argued and submitted December 2, 2019, appeals dismissed March 18, petitions for review denied June 4, 2020 (366 Or 552)

In the Matter of L. M.-C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. C.
and S. V. M.,
*Appellants.*

Marion County Circuit Court
18JU10325;
A171489 (Control), A171506

In the Matter of L. C.-M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. C.
and S. V. M.,
*Appellants.*

Marion County Circuit Court
18JU10327;
A171490, A171507

462 P3d 323

In this consolidated juvenile dependency case, mother and father appealed judgments in which the juvenile court asserted dependency jurisdiction over their children. Since the time that they filed their appeals, the juvenile court dismissed its dependency jurisdiction. The Department of Human Services filed a notice of probable mootness, suggesting that the appeals are moot because they seek reversal on judgments that have already been dismissed. Mother and father claim that the judgments will still have collateral consequences if not reversed. The Court of Appeals concluded that the jurisdictional judgments will not significantly affect either parent's rights in the ways that they identified, that a decision on the merits will have no practical effect, and that the appeals are moot.

Appeals dismissed.

Audrey J. Broyles, Judge.

Tiffany Keast, Deputy Public Defender, argued the cause for appellant L. C. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

George W. Kelly filed the brief for appellant S. V. M.

Paul L. Smith, Deputy Solicitor General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Appeals dismissed.

**DeVORE, P. J.**

In this consolidated juvenile dependency case, mother and father appealed judgments in which the juvenile court asserted dependency jurisdiction over their children. Since the time that they filed their appeals, the juvenile court has dismissed its dependency jurisdiction. The Department of Human Services (DHS) filed a notice of probable mootness, suggesting that the appeals are moot because they seek reversal on judgments that have already been dismissed. Mother and father disagree, claiming that the judgments will still have collateral consequences if not reversed. We conclude that the jurisdictional judgments will not significantly affect either parent's rights in the ways that they identified, that a decision on the merits will have no practical effect, and that the appeals are no longer justiciable. Therefore, we dismiss the appeals.

In June 2019, the juvenile court took jurisdiction over mother and father's two children. It did so on the following bases: (1) both mother and father failed to maintain a safe environment for children because they allowed children to live in a home that was unsafe and unsanitary; (2) mother had behaviors of concern involving mental health that interfered with her ability to safely parent; (3) mother physically abused children; and (4) father was unable or unwilling to protect children from mother's unsafe behaviors.

Father and mother appealed in early July 2019, arguing that the juvenile court erred in entering the judgments and taking jurisdiction. Later that same month, the juvenile court entered judgments dismissing dependency jurisdiction and terminating its wardships over children. DHS filed a notice of probable mootness under ORAP 8.45.[1] In response, the parents asserted that their appeals are not moot because the judgments of jurisdiction, left unreversed, will have collateral consequences. DHS then filed a reply in which it argued that the consequences identified by mother

---

[1] "Except as to facts the disclosure of which is barred by the attorney-client privilege, when a party becomes aware of facts that probably render an appeal moot, that party shall provide notice of the facts to the court and to the other party or parties to the appeal, and may file a motion to dismiss the appeal." ORAP 8.45.

and father are insufficient and that we should dismiss the appeals as moot.

Father argues that a decision from this court would have the practical effects of "safeguard[ing] father from the private and public stigma and future adverse consequences that flow from the judicial determinations that he was unfit to parent." He contends that DHS's success in obtaining the judgment "may increase the likelihood that DHS will initiate proceedings again in the future." Father claims that the court's rulings "permit the inference that father knowingly failed to protect the children from physical abuse by their mother," which would be "much more stigmatizing than the general neglect of parental duties" or "failure to protect." (Internal quotation marks omitted.) Father argues that reversal would "vindicate him and restore his status as a consistently safe and protective parent." Mother argues that the findings of the jurisdictional judgment "will negatively affect her reputation in the community," "prevent her from volunteering" with a local art association, and "keep her from fulfilling her plan to become employed as an EMT." Mother concludes that "[t]he only way to prevent these things from happening is to continue this appeal and obtain reversal by this court."

DHS contends that the collateral consequences that each parent identifies are factually and legally insufficient to make this appeal justiciable. Citing *Dept. of Human Services v. A. B.*, 362 Or 412, 412 P3d 1169 (2018), DHS argues that the particular findings at issue in the judgment regarding father are unlikely to significantly disadvantage him in future proceedings and that they are not so stigmatizing as to constitute a collateral consequence. With respect to mother, DHS argues that the record does not support her claim that the judgments will affect her ability to volunteer with the art association or become employed as an EMT. DHS also notes the lack of any legal authority indicating that such a problem would exist. DHS contends that more is required to establish that the appeal is justiciable.

We approach the notice of probable mootness akin to a motion to dismiss, given the manner in which the issue is presented. That is, the parties have taken their respective

positions and presented arguments for and against dismissal. When DHS urges dismissal, DHS has the burden of proving mootness, including that "the decision being challenged on appeal will have no further practical effect on the rights of the parties." *Id.* at 426. To meet that burden, DHS "need not imagine all potential collateral consequences that could result and prove their nonexistence." *Id.* Rather, the parent must first "identify any continuing practical effects or collateral consequences that, in the parent's view, render the appeal justiciable." *Id.* The burden of persuasion does not lie with the parent; the parent "has done what is necessary by identifying the collateral consequences that she believes she will face." *Id.* at 427. DHS then bears the responsibility of demonstrating that those effects or consequences are either legally insufficient or factually incorrect. *Id.* We must be persuaded that dismissal is warranted, or the appeal will not be dismissed. *Id.* at 426-27.

        The potential that the findings of a jurisdictional judgment may disadvantage the parent in future child welfare investigations and proceedings is "a valid concern." *Dept. of Human Services v. C. A. M.*, 294 Or App 605, 612, 432 P3d 1175 (2018). It may render a case justiciable when the findings would "affect the standard that the department must apply in evaluating [the parent's] conduct or the assistance the department must provide." *A. B.*, 362 Or at 428. Social stigma "also weighs against dismissing the case" when the findings "go beyond a general 'neglect of parental duties,'" *C. A. M.*, 294 Or App at 613, and when people in the parent's community "know of, necessarily will know of, or have discredited" the parent because of them, *A. B.*, 362 Or at 429. However, such stigma is "perhaps not sufficient by itself to create a justiciable controversy." *Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 292 P3d 548 (2012). Limitations on options for paid employment and volunteer work can constitute a continuing practical effect when the law clearly limits such options, or the record otherwise establishes that the findings of the jurisdictional judgment could, in fact, present such a problem. *A. B.*, 362 Or at 429.

        In *G. D. W.*, the juvenile court entered a jurisdictional judgment that incorporated a finding that the father

had sexually abused one of his children. 353 Or at 30. Although the juvenile court had entered a subsequent judgment releasing the children from its wardship, the Supreme Court held that the father's appeal from the earlier judgments was not moot. *Id.* at 31-32. The court reached its conclusion, in large part, on the ground that the state could, in future proceedings, more easily terminate the father's parental rights. *Id.* at 32. Specifically, the court cited ORS 419B.502, which provides that a parent's rights may be terminated without any effort by a social service agency to help the parent when the parent has been found unfit due to "extreme conduct toward any child," including sex abuse. *Id.* Because the finding of aggravated circumstances in challenged judgments would affect future proceedings as to the father, it would have a practical effect on his rights and prospects. For those reasons, the case was not moot. *Id.* The case illustrates the point that an appeal of a jurisdictional judgment will be justiciable if its findings could disadvantage the parent in future child abuse and neglect investigations and proceedings by affecting the standard that DHS must apply in evaluating the parent's conduct or the assistance it must provide. *See A. B.*, 362 Or at 428.

The Supreme Court reached the opposite result in *A. B.* In that case, the juvenile court took jurisdiction over the mother's child based on the following findings: The mother allowed her child to be around her domestic partner despite knowing that he had a sex offense conviction, had threatened to kill her and the child, and had engaged in a pattern of violent, threatening, and mentally unstable behavior; and the mother failed to provide for the child's therapeutic treatment and educational needs. *Id.* at 415-16. While the mother's appeal from that jurisdictional judgment was pending, the juvenile court entered a subsequent judgment terminating its wardship over her child and incorporating favorable findings as to the mother's past and continued cooperation with DHS and social service providers and the safety and adequacy of her parenting. *Id.* at 416-17. DHS moved to dismiss the appeal on account of mootness. The mother argued against dismissal, in part, on the basis that the jurisdictional judgment would have the collateral consequence of negatively affecting DHS's evaluation of her conduct in the

future. *Id.* at 427. The Supreme Court determined that the jurisdictional judgment would not have a practical effect on the mother's rights in that regard. *Id.* at 428. Significantly, it contrasted her situation with that of the father in *G. D. W.*, and noted that, unlike in *G. D. W.*, her case did not involve findings that would affect the legal standards for evaluating her case in the future. *Id.* The court also noted that DHS would consider the entire record in any future proceeding involving the mother, including the many positive and mitigating findings. *Id.* Thus, the court concluded, the jurisdictional judgment would not significantly disadvantage the mother in future proceedings. *Id.*

Although social stigma may weigh against dismissing an appeal as moot, the findings must "go beyond a general 'neglect of parental duties'" to be sufficiently stigmatizing. *C. A. M.*, 294 Or App at 613. In *A. B.*, the mother also raised, as a collateral consequence, the stigmatizing effect of the jurisdictional judgment's findings that she abused and neglected her child. *A. B.*, 362 Or at 427. The Supreme Court first considered, as general matter, whether "jurisdictional judgments are so inherently stigmatizing that they justify [the] adoption of a categorical rule permitting their appeal in all but extraordinary circumstances." *Id.* at 426. The court declined to adopt such a rule, noting the "range of findings that a juvenile court can make." *Id.* at 425. As an illustration, the court discussed the juvenile court's finding as to the father—who was not a party to the appeal—that he was "unable to protect the children from the mother's abusive and neglectful behaviors." *Id.* The court said, "That kind of finding is quite different than a finding that an individual has violated the law, and we would be hard pressed to consider that kind of finding to be inherently stigmatizing." *Id.* The court contrasted that finding with that of sex abuse in *G. D. W.*, which it characterized as "at the other end of the spectrum" and as "certainly hav[ing] a stigmatizing effect." *Id.* at 425. It concluded that not all findings necessary to a jurisdictional judgment are equally stigmatizing such that an appeal would be justiciable. *Id.*

The court then considered the stigma associated with the findings as to the mother, in particular. *Id.* at

429-30. The court noted that the mother did not claim that her family or those who worked with her child knew of or discredited her as a result of the judgment. *Id.* at 429. Rather, the mother was constantly concerned with what others would think *if* they discovered the founded allegations. *Id.* at 429-30. The court also highlighted that the law provides protection against disclosure; such judgments are not a matter of public record. *Id.* at 425, 430. It concluded that, given the concerns that the mother identified, it was persuaded that the jurisdictional judgment would not have practical effects on the mother's rights due to social stigma. *Id.* at 430.

We also addressed the concern of social stigma in *C. A. M.*, 294 Or App at 613-14. That case involved a jurisdictional judgment in which the juvenile court asserted jurisdiction over one of the mother's twins after the other had died. The court found that "[t]he child's infant twin sibling died while in the mother's care and was discovered after death to have suffered substantial, unexplained injuries that occurred while living with the mother," as well as that the "mother failed to act protectively when she knew or should have known that her child was at risk of harm from the child's father." *Id.* at 611. We concluded that the findings were "far more stigmatizing than those at issue in *A. B.*" because they went "beyond the general 'neglect of parental duties' and plainly permit[ed] the inference that the mother could have prevented her child's death and failed to do so." *Id.* at 613. We also noted that family friends had been involved in the child welfare case and were aware of the nature of the court's findings. *Id.* at 614. We agreed with the mother that the continued existence of the jurisdictional judgment could impact the relationships with key people in the child's life. *Id.*

Turning to the case at hand, we address each of father's and mother's concerns in turn. As mentioned, father argues that the juvenile court's findings that he provided an unsafe and unsanitary home and was unable or unwilling to protect the children from mother's unsafe behaviors will increase the likelihood that DHS will initiate future proceedings and will lead to social stigma. Mother contends that the findings that she abused her children, provided an

unsafe and unsanitary home, and had mental health issues that interfere with her ability to safely parent will negatively affect her reputation in the community and will prevent her from volunteering at the art association and becoming an EMT. For the reasons that follow, we conclude that the jurisdictional judgments will not significantly affect either parent's rights in the ways that they identified.

The first consequence that father raises is the effect of the findings on future DHS involvement. As in *A. B.*, the findings involved in this case would not affect the legal standards for evaluating father's care in future proceedings.[2] Father provides no further explanation for how or why the judgment in question would invite future DHS involvement. Absent a specific reason, we are persuaded that it would not.

Second, we consider the social stigma that father might experience. The finding that father was "unable or unwilling to protect children from mother's unsafe behaviors" is indistinguishable from that discussed in *A. B.*—that the father was "unable to protect the child from the mother's abusive and neglectful behaviors"—which the Supreme Court said would *not* be inherently stigmatizing. 362 Or at 425. The other finding as to father—that he failed to maintain a safe environment for his children because he allowed them to live in an unsafe and unsanitary home—does not go beyond the general neglect of parental duties such that it would create a significant risk of stigma. This is not a case in which father was found to have committed a sex crime, to have knowingly or recklessly allowed his child to die, or to have engaged in conduct of similar severity. Even assuming that the potential for social stigma could, alone, make an appeal of a jurisdictional judgment justiciable, we are not persuaded that father is at risk of that degree of social stigma.

Mother argues that juvenile court's adjudication will somehow prevent her from volunteering with the art

---

[2] Father argues that our decision in *C. A. M.* supports the opposite result. But in that case, like *G. D. W.*, the juvenile court made findings suggesting that the parent engaged in extreme conduct, which would have affected her rights in termination proceedings. ORS 419B.502(3) (abuse or neglect by the parent of any child resulting in death).

association or becoming an EMT. Those arguments—which are summary assertions of counsel—offer little insight into how the juvenile court's findings could reasonably have any bearing on those opportunities. Mother does not assert or attest that anyone associated with those jobs knows or will likely learn about the court's findings or what effect that knowledge would have. We are unaware of any facts to suggest that being an art association volunteer or becoming an EMT would entail divulging such information. The law does provide her with some protection against disclosure of the juvenile court proceedings. *See* ORS 419A.252(4)(f) (defining the "record of the case" to include "[o]rders and judgments of the court"); ORS 419A.225(1)(b) (providing that the "record of the case shall be withheld from public inspection"). Nothing in the record suggests that the requirements of those positions are such that she would be disqualified, or that the entities involved would take the court's findings into consideration. *See A. B.*, 362 Or at 429 (rejecting as a collateral consequence the mother's speculation that she may be disadvantaged in custody proceedings where the record failed to establish that the father had any interest in challenging her sole custody and where it showed that she had always been the primary parent). Thus, we are persuaded by the arguments of DHS that it is unlikely that the juvenile court's findings and judgment would impair or preclude mother from pursuing volunteer work or other employment.

In conclusion, we are satisfied that the jurisdictional judgments will not significantly affect either parent's rights by leading to future DHS involvement, social stigma, or denial of job and volunteer opportunities. Accordingly, a decision on the merits of those judgments will have no practical effect, and the appeals are no longer justiciable.

Appeals dismissed.