Argued and submitted May 4; decision of Court of Appeals affirmed in part and reversed in part, juvenile court's order denying the motion to dismiss dependency petitions affirmed, and juvenile court's dependency judgments vacated in part October 14, 2021

In the Matter of Y. S. D.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Respondent on Review,*
*v.*
P. D.,
*Appellant,*
*and*
J. J.,
*Petitioner on Review.*
(CC 19JU06048) (CA A172540 (Control), A172676)

In the Matter of T. J. D.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Respondent on Review,*
*v.*
P. D.,
*Appellant,*
*and*
J. J.,
*Petitioner on Review.*
(CC 19JU06049) (CA A172541, A172677)

(SC S068041)

496 P3d 1029

Parents, residents of California, were on vacation and staying at a hotel in Oregon for a weekend when the Department of Human Services removed their children from their care. A juvenile court, exercising temporary emergency jurisdiction under ORS 109.751(2), entered shelter orders and, later, dependency judgments making the children wards of the court, placing them in foster care, and ordering parents to take specified actions to regain custody of them. Parents moved to dismiss the dependency judgments on the ground that the juvenile court had authority to enter shelter orders but lacked authority to enter dependency judgments. *Held*: The juvenile court had authority to enter dependency judgments making the children wards of the court and continuing their

placement in foster care, but the court lacked authority to order actions that were not necessary to protect the children in an emergency, such as requiring the parents to participate in services or take other specified actions to regain custody of the children.

The decision of the Court of Appeals is affirmed in part and reversed in part. The juvenile court's order denying the motion to dismiss the dependency petitions is affirmed, and the juvenile court's dependency judgments are vacated in part.

En Banc

On review from the Court of Appeals.*

Tiffany Keast, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section.

Inge D. Wells, Assistant Attorney General, Salem, argued the case and filed the briefs for respondent on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

NAKAMOTO, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The juvenile court's order denying the motion to dismiss the dependency petitions is affirmed, and the juvenile court's dependency judgments are vacated in part.

_____

* On appeal from Jackson County Circuit Court, David G. Hoppe, Judge. 305 Or App 599, 469 P3d 869 (2020).

## NAKAMOTO, J.

This court allowed review of these two juvenile dependency cases as companions to *Dept. of Human Services v. J. S.*, 368 Or 516, 495 P3d 1245 (2021) (*J. S. II*), because they presented the same issue on review: whether the juvenile court's dependency judgments establishing jurisdiction and wardship over each of parents' two children exceeded the scope of the court's temporary emergency jurisdiction under ORS 109.751, one of the statutes in the Uniform Child Custody Jurisdiction and Enforcement Act as enacted in Oregon. Before issuing our decision in *J. S. II*, the court became concerned that these cases might have become moot, because the juvenile court had terminated its jurisdiction and the wardships during the pendency of the appeal. Accordingly, the court asked the parties to brief that issue.

Having considered the parties' supplemental briefs, we conclude that these cases are not moot. And, for the reasons discussed in *J. S. II*, we hold that the juvenile court had authority under ORS 109.751 to issue dependency judgments making the children wards of the court and placing them in foster care, but that it did not have authority to order parents to engage in specified activities to regain custody of the children.

We begin with some background. At the time of the events leading up to these cases, mother and father and their two children, ages two and nine, were residents of California. In August 2019, parents traveled to southern Oregon to visit some relatives for the weekend. They stayed in a hotel in Medford. During that weekend visit, mother, who has bipolar disorder, took methamphetamine and had a "mental breakdown," during which she assaulted and injured the two-year-old child. Police were called. The officer who responded to the call testified that, when he attempted to speak to mother, she displayed manic behavior and screamed incoherently. He arrested mother on charges of fourth-degree assault, endangering the welfare of a minor, and unlawful possession of methamphetamine, and she was lodged in jail. The officer took the child who had been assaulted to the hospital. DHS received an alert about the incident, and a DHS case worker met with father. Father

agreed to a "safety plan" in which he would not allow mother to have contact with the children when she was released from jail. Father failed to comply with that safety plan, permitting mother to have contact with the children the night after she was released from jail. Accordingly, on August 13, 2019, DHS removed the children and placed them in protective custody.

The next day, DHS filed dependency petitions for the children in Jackson County Circuit Court. The petitions alleged that the children were residents of California but that they were within the temporary emergency jurisdiction of the Oregon courts under ORS 109.751, because they were present in the state and subjected to or threatened with mistreatment or abuse. The circuit court signed shelter orders the following day, placing the children in the temporary custody of DHS and placing them in foster care.

Under Oregon law, not later than 60 days after a dependency petition is filed, subject to extension for good cause, the juvenile court is required to hold a hearing on the dependency petition to decide whether a child is within its jurisdiction under ORS 419B.100. ORS 419B.305(1). Accordingly, a jurisdictional hearing was scheduled for October 2019.

Before that hearing, mother and father each moved to terminate the wardships, arguing that returning the children to father's custody would not put them at immediate risk of harm and, therefore, the juvenile court did not have temporary emergency jurisdiction under ORS 109.751. DHS responded that it had contacted child protective services in California, that no action had been commenced in California regarding the children, and that the children were still endangered.

On October 15, 2019, the juvenile court denied parents' motions to terminate the wardships. The court determined that the emergency continued to exist, because mother's substance abuse interfered with her ability to safely parent the children, father had failed to protect the children from physical abuse, and father had allowed mother to have contact with the children despite being aware of the abuse.

The court entered jurisdictional judgments making the children wards of the court, committing them to the legal custody of DHS, continuing their placement in foster care, and ordering parents to take specified actions to regain custody of them. Both parents appealed from the jurisdictional judgments, arguing that ORS 109.751 does not authorize the juvenile court to adjudicate dependency petitions.

While that appeal was pending, DHS moved to terminate the wardship over the children. In support of its motion, DHS attached the affidavit of a DHS paralegal who averred that, in November 2019, the children had been returned to father's physical custody, in Oregon, and that father had successfully participated in services directed at ensuring his ability to safely parent the children. In addition, the paralegal averred that mother, who had returned to California, had been participating in mental health as well as substance abuse services and that both mother and father had employment and stable housing in California. Thus, the emergency that had formed the basis for the court's temporary emergency jurisdiction had dissipated. On February 11, 2020, the juvenile court granted the motion and terminated its jurisdiction and the wardship.

In August 2020, the Court of Appeals, in a *per curiam* opinion, affirmed the juvenile court's dependency judgments. The court held that parents' arguments concerning the scope of the juvenile court's temporary emergency jurisdiction under ORS 109.751 were foreclosed by its prior decision in *Dept. of Human Services v. J.S.*, 303 Or App 324, 464 P3d 157 (2020) (*J.S. I*). Only mother filed a petition for review, which we allowed.

We first address whether the termination of the juvenile court's jurisdiction and wardship rendered this case moot. As a general proposition, when it becomes clear that resolving the merits of a claim will have no practical effect on the rights of the parties, an appellate court may dismiss an appeal as moot. *See Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993) (appellate courts are not to decide abstract or hypothetical issues; cases in which court's decision will have no practical effects on rights of parties will be dismissed as moot); *Couey v. Atkins*, 357 Or 460, 520,

355 P3d 866 (2015) (although Oregon constitution does not *require* dismissal of moot cases involving public actions or issues of public interest, moot cases are still subject to dismissal as a prudential matter).

When a parent appeals from a jurisdictional judgment and the underlying dependency petition is subsequently dismissed, "termination of such a wardship does not necessarily render the appeal moot; whether dismissal is appropriate will depend on the particular circumstances presented." *Dept. of Human Services v. A. B.*, 362 Or 412, 414, 412 P3d 1169 (2018). Here, both parties agree that, notwithstanding that the juvenile court's jurisdiction and the wardship have been terminated and, thus, mother has effectively been granted the relief that she seeks, this case is not moot if mother identifies collateral consequences of the dependency judgments that would have a practical effect on her rights and DHS fails to prove that the identified consequences are either factually incorrect or legally insufficient. *See id.* at 426-27 (if appellant parent identifies continuing practical effects or collateral consequences resulting from dependency judgment, the department then must meet its burden of persuasion to demonstrate that the effects or consequences that the parent identifies are either legally insufficient or factually incorrect).

Mother asserts that the existence of a jurisdictional judgment in Oregon will prejudice her in any future domestic relations or dependency proceeding in California. Although mother offers no detailed explanation as to why that would be so, she cites a California Court of Appeals decision in support of her position, and DHS concedes that it would be unable to prove that the existence of an Oregon judgment would not have collateral consequences in a future domestic relations or dependency proceeding in California. We observe that California appellate courts have concluded that assertions of prejudice of the type that mother has identified in this case are sufficient to overcome an assertion of mootness and to allow a ruling on the merits in cases challenging dependency judgments. In *In re C.C.*, 172 Cal App 4th 1481, 1489, 92 Cal Rptr 3d 168, 175 (2009), for example, the court determined that, even though the juvenile court

had granted the mother the very relief that she had sought in her appeal, and even though the mother's assertions of prejudice were "highly speculative," it would proceed "in an abundance of caution [to consider the merits of her appeal] because dismissal of the appeal operates as an affirmance of the underlying judgment." *See also In re C.V.*, 15 Cal App 5th 566, 571, 222 Cal Rptr 3d 924, 929 (2017) (same). Accordingly, we decline to dismiss mother's appeal as moot.

We turn to the merits of mother's challenge to the dependency judgments. Mother acknowledges that, under ORS 109.751, the juvenile court had authority to exercise temporary emergency jurisdiction over her children and to enter shelter orders placing them in foster care. However, she argues that, because the children's home state is California and not Oregon, and because the juvenile court had not contacted a California court to request that it either assume or decline jurisdiction, ORS 109.741 operates as a bar to the juvenile court's dependency jurisdiction, precluding it from making an initial child custody determination concerning the children. Further, she argues, the juvenile court exceeded the scope of its temporary emergency jurisdiction under ORS 109.751 when it entered dependency judgments, because, in her view, the juvenile court does not have authority under ORS 109.751 to enter dependency judgments and, in any case, the dependency judgments were neither temporary nor necessary in an emergency to protect the children.

We addressed and rejected those arguments in *J. S. II*. In *J. S. II*, the mother of two children also challenged the juvenile court's authority to enter dependency judgments when she and her family were temporarily in Oregon. And, like mother here, she argued that ORS 109.741, which governs initial child custody jurisdiction, bars the juvenile court from issuing a dependency judgment when the child's home state is not Oregon and the Oregon juvenile court has not communicated with and obtained an order from the home state court declining jurisdiction. We agreed that ORS 109.741 gives the home state priority over other states in making initial custody determinations and that, in general, a state other than the child's home state can make an

initial custody determination only if the home state declines jurisdiction. *J. S. II*, 368 Or at 530.

However, we held that the jurisdictional rules set out in ORS 109.741 do not apply in cases of emergency. *Id*. Rather, we observed, ORS 109.741(1) provides that the rules set out there apply "except as otherwise provided in ORS 109.751"; thus, ORS 109.741(1) plainly provides that ORS 109.751, concerning temporary emergency jurisdiction, is an exception to the general rules. *Id*. The governing statute, ORS 109.751, provides, in part:

> "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."

ORS 109.751(1).

We held in *J. S. II* that nothing in ORS 109.751 required the juvenile court to contact the home state court to request that it decline or assume jurisdiction before the juvenile court entered dependency judgments during an ongoing emergency when there was no previous child custody determination involving either of the children. 368 Or at 530-32. We also noted that, under ORS 109.751, the juvenile court is authorized to make a "child custody determination," a statutorily defined term, and a dependency judgment falls within the definition because it authorizes the juvenile court to make provisions for the legal and physical custody of a child. *Id.* at 532-33.

This court then addressed the mother's contention in *J. S. II* that the juvenile court, exercising temporary emergency jurisdiction under ORS 109.751, exceeded its authority to enter only temporary orders when it entered the jurisdictional judgments. We agreed that a juvenile court exercising temporary emergency jurisdiction does not have authority to enter permanent or final orders. 368 Or at 533. But we held that dependency judgments are temporary, insofar as they last for a finite period of time—that is, under ORS 109.751(2), they "remain in effect until an

order is obtained from a court of a state" having initial child custody jurisdiction. *Id.* at 534. And the court determined that, because the emergency was ongoing at the time that the dependency judgments were entered, the parts of those judgments making the children wards of the state and placing them in foster care were necessary to protect the children from the threat of mistreatment or abuse. *Id.* at 535.

Finally, this court agreed with the mother in *J. S. II* that some parts of the dependency judgments were not necessary to protect the children. That is, parts of dependency judgments requiring the parents to take specified actions to regain custody of their children, while beneficial to the children in the long run, were not necessary for their protection in the emergency giving rise to the court's jurisdiction. Therefore, those aspects of the dependency judgments exceeded the court's temporary emergency jurisdiction under ORS 109.751. 368 Or at 535-36.

For the reasons discussed in *J. S. II*, we conclude that the juvenile court properly exercised temporary emergency jurisdiction over the children in this case. First, as in *J. S. II*, mother conceded that the predicates for temporary emergency jurisdiction under ORS 109.751 were met when the juvenile court entered the shelter orders for the children in this case, and mother did not dispute, either in the Court of Appeals or in this court, that the emergency continued to exist at the time that the dependency judgments were entered. The evidence in this case was legally sufficient to support the juvenile court's determination that the emergency existed when the court entered shelter orders and persisted both when the parents moved to dismiss the dependency petitions and when the court adjudicated the petitions and entered the jurisdictional judgments. That evidence included mother's admission of substance abuse that interfered with her ability to safely parent her children, testimony about and photographs of the injuries that she had inflicted on her two-year-old child, and testimony that father failed to protect the children from mother. Second, no other child custody determinations involving either of the two children had been made by another state having jurisdiction. Therefore, as in *J. S. II*, ORS 109.751, and not ORS

109.741, applies in this case. And as in *J. S. II*, the juvenile court had authority under ORS 109.751 to enter dependency judgments making the children wards of the court and continuing their placement in foster care, because the orders were temporary and the emergency giving rise to the children's removal from their parents had not yet dissipated at the time the dependency judgments were entered. In addition, because of the ongoing emergency—a child had been subjected to abuse and the children were threatened with mistreatment or abuse upon return to their parents—the juvenile court correctly denied mother's motion to dismiss the dependency petitions.

However, the juvenile court lacked authority to take actions that were not necessary in an emergency to protect the children, including, as relevant here, requiring mother to engage in specific activities to regain custody of her children. *J. S. II*, 368 Or at 535-36. Accordingly, those parts of the dependency judgments are vacated.

The decision of the Court of Appeals is affirmed in part and reversed in part. The juvenile court's order denying the motion to dismiss the dependency petitions is affirmed, and the juvenile court's dependency judgments are vacated in part.