Submitted February 9, appeal dismissed as moot March 8, 2023

In the Matter of K. A.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. A., Sr.,
*Appellant.*

Coos County Circuit Court
22JU01181; A179364

525 P3d 1245

Father challenges a judgment of the juvenile court determining that his daughter K was within the jurisdiction of the court, ORS 419B.100(1), and making her the court's ward, ORS 419B.328. After father filed this appeal, the juvenile court dismissed its dependency jurisdiction and terminated the wardship. Consequently, the Department of Human Services (DHS) moved to dismiss the appeal as moot. Father responds that the collateral consequences of the jurisdictional judgments will have continuing practical effects on him. *Held*: The Court of Appeals granted DHS's motion to dismiss because there was little likelihood that a reversal of the jurisdictional judgment would have any practical effects on father's rights.

Appeal dismissed as moot.

Megan Jacquot, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Kyle Sessions, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Appeal dismissed as moot.

**EGAN, J.**

Father appeals from a judgment of the juvenile court determining that his daughter K was within the jurisdiction of the court, ORS 419B.100(1), and making her the court's ward, ORS 419B.328. After father filed his notice of appeal, the juvenile court dismissed its dependency jurisdiction and terminated the wardship as to K. The Department of Human Services (DHS) then filed a motion to dismiss the appeal, arguing that the termination of jurisdiction and wardship of K renders the appeal moot. ORAP 8.45(3). Father argues that the jurisdictional judgment will have continuing collateral consequences and that the appeal is, therefore, not moot. We conclude that the jurisdictional judgment will not significantly affect father's rights in the ways that he identifies, that a decision on the merits will have no practical effect, and that the appeal is no longer justiciable. Therefore, we dismiss the appeal as moot.

In November 2021, DHS became involved with father and his four children,[1] including K, after father's son, J, accused father of physical and verbal abuse stemming from father hitting J with a broom and from father and the siblings' reports that they all had duct taped J to a chair as a form of punishment. After DHS removed J from the home, K displayed signs of mental health decline, and she attempted suicide by taking Pamprin. K initially told father that she took 30 pills, but she later told him that she had taken only five pills. Father researched Pamprin, and he believed that the amount K had taken would not harm her. Father did not take K to the hospital, but he monitored her throughout the night. He subsequently took K to see their family doctor for mental health counseling. DHS filed a petition asking the court to take jurisdiction over K.

In July 2022, the juvenile court took jurisdiction over K based on the following findings: (1) Father physically abused J; (2) father included K in the inappropriate physical restraint of J, and (3) K has mental health problems that require treatment that father failed to provide. In that judgment, the juvenile court also found J to be within its

---

[1] The mother of father's four children is deceased. At the time of this appeal, K is 17 years old.

jurisdiction based upon findings that, among other things, father physically abused J, and father and J's siblings reported that they had duct taped J to a chair. K was placed in father's home, but J was placed in the temporary custody of DHS.[2]

Father appealed the jurisdictional judgment in August 2022, arguing that the juvenile court erred in entering the judgment and taking jurisdiction of K.[3] In November 2022, the juvenile court entered a judgment *nunc pro tunc* to October 24, 2022, dismissing dependency jurisdiction and terminating its wardship over K. In dismissing the jurisdictional judgment, the juvenile court determined that

> "[K] has done everything she is willing to do as far as counseling is concerned. [Father] has been safely parenting the two other girls and [K] has done well on the in-home plan. She is connected to a strong support system at the time and the parties agree that the safety risks have been sufficiently ameliorated."

After the dismissal in the trial court, DHS filed a motion to dismiss father's appeal pursuant to ORAP 8.45(3), arguing that the appeal is moot based on the juvenile court's dismissal of jurisdiction. Father responded that his appeal is not moot, because the jurisdictional judgment, if not reversed, will have collateral consequences.

Father asserts three collateral consequences of the jurisdictional judgment. First, father argues that "the jurisdiction judgment will disadvantage father in any future child welfare investigations and proceedings because the findings leave the juvenile court and the department with the impression that dependency jurisdiction would again be warranted should similar circumstances arise in the future." Second, father argues that he cannot challenge the Child Protective Services (CPS) "founded disposition" as long as the judgment stands, and reversal will permit father to request review of that founded disposition. Lastly,

---

[2] The court determined that father's two other daughters were not within the jurisdiction of the court under ORS 419B.100.

[3] Father also filed a notice of appeal of the jurisdictional judgment regarding J but, on father's motion, we dismissed that appeal in November 2022.

father argues that the jurisdictional judgment disadvantages father in domestic relations matters regarding K.[4]

In its reply, DHS primarily argues that those concerns do not prevent this case from being moot. DHS argues that the jurisdictional judgment relating to K will have no practical effect on father's rights, because father no longer appeals the jurisdictional judgment relating to J, and the jurisdictional judgments as to both children are based on many of the same facts. Thus, any collateral consequences due to K's jurisdictional judgment will exist as a result of J's jurisdictional judgment or will be minimal when compared to any adverse impact from J's jurisdictional judgment, which father does not challenge.[5]

An appeal is moot when "the court's decision no longer will have a practical effect on the rights of the parties." *Dept. of Human Services v. G. D. W.*, 353 Or 25, 292 P3d 548 (2012). On a motion to dismiss for mootness, the party moving for dismissal bears the burden of proof. *Dept. of Human Services v. A. B.*, 362 Or 412, 426, 412 P3d 1169 (2018). When DHS "takes the position that termination of a wardship renders an appeal moot and demonstrates that the child is no longer subject to department control," the parent must then identify the practical effects or consequences that the parent believes will result from the underlying jurisdictional decision. *Id.* "[I]n order to prevent a case from being considered moot, a collateral consequence must be something beyond mere speculation. *** [A] collateral consequence 'must have a significant probability of actually occurring; a speculative or merely possible effect is not enough.'" *Johnson v. Premo*, 302 Or App 578, 592, 461 P3d 985 (2020) (quoting *Oregon School Activities v. Board of Education*, 244 Or App 506, 510,

---

[4] As noted, the mother of the children is deceased. K's paternal grandmother filed a petition in January 2022 for visitation with the four children based on her "ongoing personal relationship" with them. That petition was dismissed by stipulation of the parties.

[5] DHS also argues that all of father's proposed collateral consequences are speculative; that the consequence relating to challenge of the CPS "founded" disposition does not exist, because father never timely appealed the "founded" disposition, as required by OAR 413-010-0721 and 413-010-0722; and that the judgment will not affect the rebuttable presumption that father acts in his children's best interests in any future domestic relations proceeding. *See* ORS 109.119(2). We need not resolve those issues, however, because of the basis on which we conclude that this appeal is moot, discussed below.

260 P3d 735 (2011)). Once the parent identifies collateral consequences, DHS retains the burden of persuasion on its motion, and "[i]t must demonstrate that the effects or consequences that the parent identifies are either legally insufficient or factually incorrect." *A. B.*, 362 Or at 426. "It will be up to the appellate court to determine the existence and significance of those effects or consequences and to decide, as a prudential matter, whether an appeal is moot." *Id*.

The effect of a jurisdictional judgment on future DHS investigations "is a valid concern." *Dept. of Human Services v. C. A. M.*, 294 Or App 605, 612-13, 432 P3d 1175 (2018) (noting the fact that DHS prevailed in court "may increase the likelihood that DHS will initiate proceedings again in the future," and that consequence was "a valid concern"). We have determined that, in some circumstances, an inability to dispute a "founded" disposition was a collateral consequence that rendered an appeal justiciable.[6] *See, e.g., State ex rel Juv. Dept. v. L. B.*, 233 Or App 360, 364, 226 P3d 66 (2010) ("[T]he juvenile court's judgment asserting jurisdiction, as well as any concomitant DHS findings regarding abuse or neglect, negatively affect [the parent's] record with the department[.]"); *see also Dept. of Human Services v. T. B.-L.*, 320 Or App 434, 436-37, 514 P3d 131 (2022) (briefly addressing and denying a motion to dismiss for mootness where the alleged collateral consequences included disadvantages in subsequent DHS investigations, an inability to obtain agency review of any future founded dispositions regarding child abuse or neglect, and effects on the father's right to custody).

The Supreme Court held in *G. D. W.* that a challenge to the jurisdictional judgments against the parents, which included findings that the father had sexually abused one of his children, was not moot when it meant that the state could, in future proceedings, more easily terminate the father's parental rights. 353 Or at 32. The court cited

---

[6] DHS will not review a "founded disposition" if the juvenile court's findings are consistent with the findings of that disposition. OAR 413-010-0723. CPS, in conducting any future investigations, reviews "historical information on the family and the child that may be useful in completing the CPS assessment," including any previous "founded" abuse dispositions. OAR 413-015-0415(1); *State ex rel Juv. Dept. v. L. B.*, 233 Or App 360, 364, 226 P3d 66 (2010).

ORS 419B.502, which, as the court noted, provides that parents' rights "may be terminated without any effort by social service agenc[ies] to help [the] parent adjust his or her conduct if [the] court finds that the parent is unfit by reason of a single incident of *extreme conduct* toward any child." *Id.* (emphasis added; internal quotation marks omitted).

But the adverse effect of a jurisdictional judgment on future DHS investigations does not necessarily cause an appeal to remain justiciable. When "the findings involved * * * would not affect the legal standards for evaluating [the parent's] care in future proceedings," we have concluded that the parent's appeal was moot. *Dept. of Human Services v. L. C.*, 303 Or App 37, 45, 462 P3d 323 (2020). In *A. B.*, the Supreme Court distinguished *G. D. W.*, and it concluded that an increased risk of future DHS involvement was not a legally sufficient collateral consequence. 362 Or at 427-28. The court said that, in evaluating the jurisdictional judgment's impact on any future investigations, DHS would look at the whole case, including the reasons for dismissal of the jurisdictional judgment. *Id.* at 428. Because DHS would look at the entire record, "the existence of the findings and judgment [would] not be significantly disadvantageous" in a future DHS investigation such that the jurisdictional judgment would "create a significant practical effect on [the parent's] rights." *Id.*

An impact on future domestic relations matters may also be a collateral consequence that causes an appeal to remain justiciable. In *Dept. of Human Services v. P. D.*, 368 Or 627, 632, 496 P3d 1029 (2021), the court decided that the appeal was not moot, in part, because of DHS's concession that "it would be unable to prove that the existence of an Oregon judgment would not have collateral consequences in a future domestic relations or dependency proceeding in California." The court noted that "California appellate courts have concluded that assertions of prejudice of the type that mother has identified in this case are sufficient to overcome an assertion of mootness[.]" *Id.* In contrast, in *A. B.*, the court held that there was "little likelihood that the jurisdictional judgment [would] affect mother's right to sole custody in the future," noting that "the record [did] not establish" that the jurisdictional judgment would give father any

basis to challenge mother's sole custody. 362 Or at 428-29. The court explained that the facts of the case "mitigate[d] the effect that the jurisdictional judgment could have in any future domestic relations proceedings between the parents." *Id.*

As noted, DHS has the burden of showing that the jurisdictional judgment "will have no further practical effect on the rights of the parties." *Id.* Here, the judgment regarding K reflects determinations that father physically abused J, included K in physically restraining her sibling J, and was unable to provide for K's mental health treatment. The first two determinations would not be affected by reversal of the jurisdictional judgment relating to K, because those determinations also exist in the jurisdictional judgment relating to J, which father does not challenge. Regarding those two determinations, there is little likelihood that the asserted consequences—adverse effects on future DHS involvement, an inability to challenge the founded disposition, and disadvantages in any prospective domestic relations cases—will be affected by the jurisdictional judgment relating to K any more than by the jurisdictional judgment as to J. Thus, there are no "practical effects" of those two determinations if the jurisdictional judgment as to K is allowed to stand.

The single determination in the jurisdictional judgment as to K, which is not also presented by the judgment as to J, is father's inability to provide for K's mental health treatment at the particular point in time that the judgment concerned. Given the juvenile court's bases for dismissing K's jurisdictional judgment and the facts included in J's jurisdictional judgment, there is little likelihood that that particular determination will create collateral consequences for father in the ways that he alleges. *See id.* at 427-28 (the jurisdictional judgment was not "significantly disadvantageous," because DHS would consider all the facts in the record in any future investigations and, based on the facts in the record, there was "little likelihood that the jurisdictional judgment [would] affect [the] mother's right to sole custody in the future"); *see also L. C.*, 303 Or App at 45-46 (concluding that the father's appeal was moot where, "[a]s in *A. B.*, the findings involved in [the] case would not affect the legal standards for evaluating father's care in future

proceedings" and, thus, the judgment would not "significantly affect" father's rights).

We conclude that there is little likelihood that the jurisdictional judgment as to K will adversely affect father in any future DHS investigations or proceedings, adversely affect father's ability to appeal DHS's founded disposition, or adversely affect any domestic relations matters. Accordingly, we conclude that a decision on the merits of the judgment will have no practical effect and the appeal is therefore moot.

Appeal dismissed as moot.