Submitted July 12 on respondent's motion to dismiss filed July 31, appellant L. N. S.'s response to respondent's motion to dismiss filed August 14 and respondent's reply filed on August 21; motion to dismiss granted, appeal dismissed as moot October 11, 2023

In the Matter of A. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

L. N. S.
and A. S.,
*Appellants.*

Douglas County Circuit Court
22JU04496; A180424

537 P3d 983

Mother and child appeal from a juvenile court judgment asserting dependency jurisdiction under ORS 419B.100 and making child a ward of the court. They challenge the court's denial of their joint motion to dismiss the dependency petition and the court's rulings on the three allegations underlying the jurisdictional judgment. While this appeal was pending, the juvenile court dismissed jurisdiction and terminated the wardship, and the Department of Human Services (DHS) moved to dismiss the appeal as moot. Mother objects, arguing that her appeal is not moot because the jurisdictional judgment will disadvantage her in possible domestic relations proceedings brought by nonparents and in future child welfare investigations and proceedings. In reply, DHS contends that mothers' arguments are legally insufficient to render her appeal justiciable. *Held*: The consequences that mother identified were legally insufficient to render her appeal justiciable under the applicable legal standards. See *Dept. of Human Services v. J. A.*, 324 Or App 445, 448-49, 525 P3d 1245 (2023) (explaining those standards). There is no significant probability that the rulings that mother challenged would affect the legal standards for evaluating her rights under the specific circumstances that she identified and in the manner that she described.

Motion to dismiss granted; appeal dismissed as moot.

Ann Marie Simmons, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sean Connor, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant L. N. S.

Ginger Fitch and Youth, Rights & Justice filed the brief for appellant A. S.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Motion to dismiss granted; appeal dismissed as moot.

**ORTEGA, P. J.**

In this juvenile dependency case, mother and her child, A, appeal from the juvenile court judgment asserting jurisdiction under ORS 419B.100 and making A a ward of the court. On appeal, mother and A challenge the court's denial of their joint motion to dismiss the dependency petition, as well as the court's rulings on the three allegations underlying the jurisdictional judgment. While this appeal was pending, the juvenile court dismissed jurisdiction and terminated the wardship, and the Department of Human Services (DHS) moved to dismiss this appeal as moot. In response, mother contends that her appeal is not moot.[1] She identifies two collateral consequences—that the jurisdictional judgment will disadvantage her in possible domestic relations proceedings brought by nonparents and in future child welfare investigations and proceedings. We conclude that those collateral consequences are legally insufficient to render this appeal justiciable. We therefore grant DHS's motion to dismiss, which obviates the need to address the merits of mother's and child's appeal.

DHS filed a dependency petition when A was approximately 20 months old after learning that A accessed mother's pain pills when mother left A unsupervised for several minutes. DHS asserted that the "condition and circumstances *** [we]re such as to endanger [A's] welfare." *See* ORS 419B.100(1)(c) (granting the juvenile court "exclusive original jurisdiction in any case involving a person who is under 18 years of age" under those circumstances). Less than two months later, DHS filed an amended petition.[2] At the close of DHS's case at the ensuing jurisdictional hearing, mother moved to dismiss the dependency petition, and A joined the motion. The court denied mother's motion and asserted jurisdiction over A, making her a ward of the court. The court ruled that DHS had proved the following allegations:

---

[1] A did not respond to DHS's motion to dismiss as moot.

[2] DHS's amended dependency petition refers to A as a nine-month-old child. The record, however, indicates that A was born in January 2021 and DHS's original dependency petition is dated September 2022, so A was approximately a 20-month-old child at the time that the original dependency petition was filed and approximately 22 months old at the time of the amended petition.

"[3A -] [M]other has a pattern of leaving [A] unattended which presents a safety threat to [A].

"[3B -] Despite having participated in services designed to improve *** mother's parenting skills, she is unable to safely parent [A].

"[3C -] [M]other's cognitive ability and/or mental health, including substance use, affects her ability to provide a safe environment for [A]."

In ruling that mother had a pattern of leaving A unattended, the court noted that mother had participated in services and had participated in multiple conversations with DHS about that same subject with respect to A and to mother's older child, E.[3] The court then entered a judgment reflecting its rulings and granting custody of A to DHS for care, placement, and supervision.

Mother and A appeal. In five assignments of error, mother challenges the juvenile court's ruling on her motion to dismiss the dependency petition, its jurisdictional judgment, and its rulings on allegations 3A, 3B, and 3C. A assigns error to the denial of mother's motion to dismiss and to the court's judgment.

After this appeal was commenced, the juvenile court dismissed A's wardship and closed the case. The judgment of dismissal contained no additional findings but indicated that based upon DHS's request, "and good cause appearing," the court found that A's "best interest" would be "served by a dismissal of the wardship."

DHS asserts that this appeal is moot, contending that our decision on the merits of mother's arguments would have no practical effect on mother's rights. According to DHS, because A has no legal father and there are no pending custody proceedings involving A, the juvenile court's finding of jurisdiction has no ongoing impact on mother in light of the dismissal of the wardship.[4]

---

[3] E was under DHS's custody and living with a relative at the time of the jurisdictional proceedings at issue and is not involved in this appeal.

[4] "A juvenile court's termination of its jurisdiction and a wardship ordinarily renders moot an appeal of the underlying jurisdictional judgment." *Dept. of Human Services v. C. T.*, 288 Or App 593, 599, 406 P3d 191 (2017), *rev den*, 362 Or 482, and *rev den*, 362 Or 545 (2018).

Mother objects, urging two reasons for us to decide the merits of her appeal. She first contends that the fact that A has no legal father does not preclude nonparents from petitioning for custody, guardianship, or right of visitation, which she asserts would have a practical effect on her rights. Mother points to ORS 109.119, which allows nonparents to petition for or intervene in matters related to custody, guardianship, and visitation, or other matters related to the child under specific circumstances. Second, mother argues that the juvenile court's rulings in the jurisdictional judgment "will disadvantage" her in any future child welfare investigations and proceedings.

In reply, DHS first contends that mother's assertions as to why this appeal is not moot are speculative because they identify only mere possibilities that are insufficient to demonstrate justiciability. Second, DHS argues that the juvenile court's rulings will not impact mother's future interactions with DHS. According to DHS, mother will suffer no additional consequences from the proceedings regarding A that she would not already have from the proceedings regarding E, who is in substitute care and with whom DHS had been involved "continuously" for over three years.[5] We agree with DHS.

As we have explained:

"An appeal is moot when the court's decision no longer will have a practical effect on the rights of the parties. On

---

[5] The record before the juvenile court shows that between 2019 and 2023, the Oregon Citizen Review Board, which helps courts review cases of children in foster care, on at least three occasions issued findings and recommendations regarding E, who entered care in 2018. The board's written reports indicated that the juvenile court exercised jurisdiction over E because "mother's mental health interfere[d] with her ability to safely parent" E and that mother had "exposed" E to "violence and/or domestic violence which create[d] a [then] current risk of harm" to E. Those reports further indicated that E could not return to mother's care at the time due to safety concerns. The record also shows that mother's 2019 psychological evaluation in connection to the proceedings regarding E diagnosed her with bipolar disorder, post-traumatic stress disorder, substance use disorder, child neglect, and child physical abuse. In 2020, another psychological evaluation diagnosed mother with bipolar disorder and posttraumatic stress disorder but indicated that mother had made positive progress regarding the other diagnoses, including her prior diagnosis as a child abuser. Also, multiple juvenile court judgments involving E, including a March 2023 judgment, indicate that E could not "safely return to [mother] within a reasonable time" and should remain under guardianship.

> a motion to dismiss for mootness, the party moving for dismissal bears the burden of proof. When DHS takes the position that termination of a wardship renders an appeal moot and demonstrates that the child is no longer subject to department control, the parent must then identify the practical effects or consequences that the parent believes will result from the underlying jurisdictional decision. In order to prevent a case from being considered moot, a collateral consequence must be something beyond mere speculation. A collateral consequence must have a significant probability of actually occurring; a speculative or merely possible effect is not enough. Once the parent identifies collateral consequences, DHS retains the burden of persuasion on its motion, and it must demonstrate that the effects or consequences that the parent identifies are either legally insufficient or factually incorrect. It will be up to the appellate court to determine the existence and significance of those effects or consequences and to decide, as a prudential matter, whether an appeal is moot."

*Dept. of Human Services v. J. A.*, 324 Or App 445, 448-49, 525 P3d 1245 (2023) (internal citations, quotation marks, brackets, and ellipsis omitted). As we explain below, we conclude that DHS has demonstrated that the consequences that mother identified are legally insufficient to render her appeal justiciable.

We begin with the first consequence mother has identified—that the court's judgment may affect mother's rights against nonparents under ORS 109.119(1), (3)(a) and (b). As DHS argues, there is only a mere possibility that the court's rulings could affect mother's rights in the manner that she claims. That is because there is little likelihood that the rulings that mother challenges on appeal—that she failed to properly supervise A, was unable to safely parent A, and had abused substances—can "affect the standard" to be applied "in evaluating mother's conduct" in a possible proceeding brought by a nonparent under ORS 109.119. *Dept. of Human Services v. A. B.*, 362 Or 412, 428, 412 P3d 1169 (2018).

In granting a nonparent's petition for intervention concerning custody, placement or guardianship, or an order providing for other type of relief, a court is required to "presum[e] that the legal parent acts in the best interest of the

child." ORS 109.119(2)(a). In deciding whether that presumption has been rebutted, the court may—but is not required to—consider several factors. ORS 109.119(4)(a), (b) (listing those factors). However, the factors that could negatively impact mother in a possible ORS 109.119 proceeding require present circumstances, not past conduct. The jurisdictional allegations at issue in this appeal would not bear on a future proceeding under ORS 109.119. Accordingly, there is no significant probability that the rulings that mother challenges will "affect the legal standards for evaluating" her care in the future or will have an actual adverse consequence to her rights against nonparents under ORS 109.119. *See Dept. of Human Services v. L. C.*, 303 Or App 37, 45, 462 P3d 323, *rev den*, 366 Or 552, and *rev den*, 366 Or 552 (2020) (reaching a similar conclusion). We therefore agree with DHS that the first collateral consequence that mother identifies is legally insufficient to render her appeal justiciable.

We turn to the second consequence—that the juvenile court's rulings will affect mother in future child welfare investigations and proceedings. Although mother cites several cases in support of that argument,[6] we understand mother's argument here to be limited to the general assertion that the juvenile court's rulings will affect her in future child welfare matters. Mother's broad argument fails to explain how each case specifically relates to her particular circumstances. So framed, we agree with DHS that mother's general assertion—that the juvenile court judgment will affect her rights in future child welfare investigations or proceedings—does not identify a real and adverse effect or probable collateral consequence that can be prevented by our decision on the merits of her arguments in this appeal. *Dept. of Human Services v. A. H.*, 275 Or App 788, 790-91, 365 P3d 1183 (2015) ("[a] collateral consequence for purposes of mootness is a probable adverse consequence to a party as a result of the challenged action" (internal quotation marks and brackets omitted)).

Mother's general concern regarding the consequences of the court's rulings to her possible interactions with DHS

---

[6] *See Dept. of Human Services v. P. D.*, 368 Or 627, 496 P3d 1029 (2021); *see also Dept. of Human Services v. A. B.*, 362 Or 412, 412 P3d 1169 (2018); *Dept. of Human Services v. A. H.*, 275 Or App 788, 365 P3d 1183 (2015); *State ex rel Juv. Dept. v. L. B.*, 233 Or App 360, 226 P3d 66 (2010).

and the court in the future, although understandable, identifies no consequence that has a significant probability of actually occurring. As DHS argues, the circumstances of this case indicate that any adverse consequences of the challenged rulings relating to A would be no greater than the consequences arising from mother's prior history with DHS and with the court regarding her older child, E. *See J. A.*, 324 Or App at 452 (concluding that the juvenile court's determinations that could otherwise affect the parent's rights in the future did not render the appeal justiciable because there was "little likelihood" that the effect would occur in light of other facts known to the court and DHS outside of the challenged determinations).

Indeed, in light of mother's record with DHS and with the juvenile court, there is little likelihood that the rulings regarding A would disadvantage mother in future child welfare investigations or proceedings. *A. B.*, 362 Or at 428 (the court's rulings would not be "significantly disadvantageous" to the mother in future investigations because DHS would consider all the facts in the record and, in light of other facts available, there was "little likelihood" that the juvenile court's rulings would have "a significant practical effect" on the mother's rights). Like in *A. B.*, in a future child welfare investigation or proceeding against mother, it is possible that DHS will consult its records and those of the juvenile court, which would include both disadvantageous and mitigating findings regarding mother. Those facts not only include evidence that mother neglected and was not able to safely parent E and then A, but also that mother made significant progress during E's proceedings and that the juvenile court dismissed A's wardship over A because it understood that there was good cause to do so.

In the absence of a more specific consequence, mother's assertion that the juvenile court's findings could disadvantage her in future investigations and proceedings indicate a mere possibility rather than a real adverse effect. *See Brumnett v. PSRB*, 315 Or 402, 407, 848 P2d 1194 (1993) (the "mere possibility" of an adverse consequence is "not sufficient to make dismissal inappropriate"); *compare A. B.*, 362 Or at 428 (the future consequences that the mother

identified did not have real adverse effect and did not render her appeal justiciable where the decision being challenged on appeal would have no further significant practical effect on her rights in light of other circumstances that could also be considered) *with Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 292 P3d 548 (2012) (the father's appeal was not moot because the juvenile court's finding that the father had sexually abused one of his children, which was incorporated into the judgment, could "have real and adverse effects on [the] father" as the state could more easily terminate the father's parental rights in the future). Hence, the second consequence that mother identifies is legally insufficient to render her appeal justiciable.

Accordingly, we agree with DHS that each of those two collateral consequences identified by mother amount to a mere possibility with no significant probability of actually occurring rather than a continuing and real adverse effect on mother's parental rights.

Motion to dismiss granted; appeal dismissed as moot.